UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ANDRZEJ SKRODZKI,

                Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 0 3 2013 ★
BROOKLYN OFFICE

**AMENDED MEMORANDUM &
ORDER**
11-CV-5173 (MKB)

MARGO K. BRODIE, United States District Judge:

On October 21, 2011, Plaintiff Andrzej Skrodzki, proceeding *pro se*, filed the above-captioned Complaint, seeking review of Defendant Commissioner of Social Security's denial of Plaintiff's request that the recovery of overpayment be waived. Defendant then moved for judgment on the pleadings. The Court heard argument by telephone on October 29, 2012.[1] For the reasons set forth below, Defendant's motion for judgment on the pleadings is denied, and the action is remanded for consideration of Plaintiff's new evidence.

**I.   Background**

Plaintiff was injured at work on May 9, 2000 and began receiving worker's compensation on May 10, 2000. (R. at 79, 135.) On April 10, 2001, Plaintiff applied for disability insurance benefits. *Id.* at 29–36, 79. When Plaintiff applied, he informed the Social Security Administration ("SSA") that he was receiving worker's compensation benefits. *Id.* at 79. Plaintiff's application was approved, and he began receiving disability benefits. *Id.* at 26.

---

[1] Plaintiff was provided with a Polish interpreter at the argument, who also appeared by telephone.

Plaintiff continued to receive worker's compensation payments until January 24, 2003, when the payments were suspended due to a third-party settlement. *Id.* at 138. Plaintiff received $340,000 in the third-party settlement. *Id.*

On May 17, 2008, Plaintiff received a letter from the SSA, informing him that he had been overpaid $3,448. *Id.* at 49. The SSA had not adjusted Plaintiff's benefits to account for the worker's compensation that he was receiving until 2003. *Id.* The letter informed Plaintiff that he had the right to appeal the SSA's decision, or, in the alternative, the right to seek a waiver of recovery of the overpayment. *Id.* at 50. Plaintiff filed a request for reconsideration on July 7, 2008. *Id.* at 86. Upon reconsideration, the SSA found that the overpayment determination was correct but advised Plaintiff of his right to seek a waiver. *Id.* at 83. On March 13, 2009, Plaintiff filed a request for a waiver. *Id.* at 96. In his waiver request, Plaintiff stated that the total amount of money that he had in a bank account was $101, and that he and his wife did not have a car or any real estate property. *Id.* at 100. He indicated that their only monthly income was his social security benefits ($654) and his wife's food stamps ($323). *Id.* at 102. He stated that their monthly expenses were $934 — rent or mortgage ($421), food ($382) and utilities ($131). *Id.* at 103.

On March 28, 2009, Plaintiff was informed that his request for a waiver was denied but that he would have the opportunity to have a personal conference to review his file with "J Kim" of the SSA. *Id.* at 107. On April 8, 2009, Plaintiff met with Kim and provided her with copies of the letter he previously submitted in 2001, which informed the SSA of his worker's compensation benefits. *Id.* at 93. Plaintiff claims that Kim was embarrassed by the SSA's mistake and made a copy of the letter. *Id.* Kim informed Plaintiff that his waiver request would not be granted. *Id.* On May 27, 2009, Plaintiff filed a request for a hearing by an Administrative

Law Judge ("ALJ"). *Id.* at 39. Plaintiff argued that he had informed the SSA in 2001 that he was receiving worker's compensation benefits and that he should not have to repay the overpayment since it was not his fault. *Id.* at 40. He further argued that the SSA had treated him poorly and that the SSA was discriminating against him by seeking to recover the overpayment. *Id.* Plaintiff alleged that Kim had attempted to steal Plaintiff's April 2001 letter informing the SSA about his worker's compensation payments. *Id.* On June 2, 2009, Plaintiff received a notice that his benefits would be withheld in their entirety from June to October 2009, he would receive a partial award of his benefits for November 2009, and his benefits would be paid in full beginning in December 2009. *Id.* at 53. According to the SSA, Plaintiff's wife, Walentyna Skrodska, submitted an application on June 15, 2009 to SSA, which stated that her husband had an IRA account at the Polish Slavic Center valued at $21,300.13.[2] *Id.* at 195. On June 22, 2009, Plaintiff's wife's application was denied because she had resources worth more than $3,000. *Id.* at 200. In fact, Plaintiff closed his IRA account at the Polish Slavic Center on February 3, 2009, and his wife closed her account on November 21, 2007. (Pl. Opp'n 2–3, 62–69.)

A hearing was held before the ALJ on September 29, 2009. (R. at 71.) At the hearing, the ALJ informed Plaintiff of his right to have an attorney, and Plaintiff waived that right.[3] *Id.* at 174. Plaintiff testified at the hearing that his wife no longer worked but received worker's compensation — $270 every two weeks. *Id.* at 178–79. Plaintiff also testified that he went to Poland approximately once a year and that he received medical treatment in Poland. *Id.* at 180.

---

[2] The administrative record does not include the application that Plaintiff's wife submitted to the SSA. (R. at 192–199.) The record only includes the "application summary," which was created by the SSA and was not signed by Plaintiff's wife. *Id.*

[3] The ALJ's decision states that Plaintiff was represented at the hearing "by Michelle Saich, a non-attorney." (R. at 25.) Plaintiff was not represented by anyone at the hearing, *id.* at 174, and he has never even heard of "Michelle Saich," *id.* at 18, 20, 142.

He also testified that he would generally stay in Poland for about a month. *Id.* at 182. Plaintiff testified that he received $340,000 in a third-party settlement, but one third of the settlement went to his lawyer and the remainder was spent buying the co-op he now lives in and paying for his daily living costs over the past six years. *Id.* at 188. He testified that he does not have any of the settlement money and that he has credit card debt. *Id.*

The ALJ denied Plaintiff's application for a waiver. *Id.* at 27. The ALJ found that Plaintiff had failed to timely inform the Commissioner of his worker's compensation settlement and, therefore, was not without fault in receiving and accepting the overpayment. *Id.* at 26. Specifically, the ALJ found that, even though Plaintiff "asserted at the hearing that he sent the Administration a letter concerning the results of his worker's compensation claim," Plaintiff had not informed the SSA until 2009. *Id.* However, Plaintiff's April 10, 2001 application states, "I am receiving or expect to receive worker's compensation," *id.* at 79, and, at the hearing, Plaintiff provided the court with a copy of his April 10, 2001 letter to the SSA, indicating that he was receiving worker's compensation, *id.* at 181–82, 184–85. The ALJ next found that Plaintiff had "sufficient resources to allow for repayment without causing him hardship" based on Plaintiff's "monthly benefit payments," as well as "resources in the form of the settlement moneys he received in connection with both his worker's compensation payments and the third-party settlement." *Id.* at 26–27. The ALJ does not cite to, nor does there appear to be, any evidence in the record that Plaintiff still has any of the settlement money. *Id.* at 188. Moreover, Plaintiff was no longer receiving worker's compensation benefits or any other monthly benefits. *Id.* at 102, 138.

Plaintiff appealed the ALJ's decision to the Appeals Council. *Id.* at 134. On June 7, 2011, the Appeals Council informed Plaintiff that it intended to find that, although Plaintiff was

4

without fault in accepting the overpayment, recovery of the overpayment would not defeat the purpose of Title II of the Social Security Act (the "Act") or be against equity and good conscience. *Id.* at 134–35. The Appeals Council informed Plaintiff that he had 30 days to send any additional evidence. *Id.* at 135. On July 6, 2011, Plaintiff responded to the Appeals Council, submitting credit card statements to demonstrate the debt he was forced to incur during the period his benefits were withheld or reduced. *Id.* at 139–171. Plaintiff's credit card statements show charges for airline tickets, *id.* at 147–48, 161, 165, 168; electronics, *id.* at 147, 157; one charge to Victoria's Secret, *id.* at 157; one charge to Chanel.com, *id.* at 159; and a few other minor online purchases, *id.* at 147–171. Plaintiff's credit card statements also indicate that he took out a $300.00 cash advance on November 17, 2009. *Id.* at 150.

The Appeals Council issued a decision on August 24, 2011, reversing the ALJ's finding that Plaintiff was not without fault in accepting and causing the overpayment but adopting the finding that recovery would not defeat the purpose of the statute or be against equity and good conscience. *Id.* at 6–8. In finding that recovery of the overpayment would not deprive Plaintiff "of income required for ordinary and necessary living expenses," the Appeals Council cited Plaintiff's 2003 settlement of $340,000 and his ownership of real estate in the form of a co-op. *Id.* at 7. The Appeals Council rejected Plaintiff's claim that his credit card statements proved that recovery should be waived. *Id.* The Appeals Council found that the credit card statements reflected charges — airline tickets, Chanel, and Victoria's Secret items — that were not "necessary and ordinary living expenses." *Id.* Finally, the Appeals Council noted that Plaintiff's wife had been found ineligible for supplemental security income ("SSI") in 2009 because Plaintiff had a bank account containing $21,300.13. *Id.* In conclusion, the Appeals Council found that "the claimant's statement, credit card bills and the evidence in the record are not

sufficient to establish that recovery of the overpayment would leave the claimant unable to pay for his necessary and ordinary living expenses and thus defeat the purpose of Title II of the Act." *Id.* The Appeals Council also noted that "there is no evidence that the claimant relied on the overpayment funds to his detriment or relinquished a valuable right because of his reliance on the overpaid monies." *Id.* at 8.

Plaintiff then filed the instant action, seeking reversal of the Commissioner's decision. In support of his application, Plaintiff submitted a number of documents, including bank statements that demonstrate that Plaintiff closed his Polish Slavik Center account prior to the suspension of his disability benefits. (Pl. Opp'n 62–69.) At argument, Plaintiff represented to the Court that he had additional credit card statements that would demonstrate the cash advances he was forced to take during the period that his benefits were suspended. The Court granted Plaintiff leave to submit additional documents. Plaintiff provided the Court with credit card statements from the relevant time period, which show additional cash advances on July 7, 2009 and August 27, 2009. (Pl. Suppl. Mem. 1; Pl. Suppl. Ex. at 1, 3.)

## II. Discussion

### a. Standard of Review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence requires "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would *have to conclude*

*otherwise.*" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citations and internal quotation marks omitted). In deciding whether substantial evidence exists, the court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). The Commissioner's factual findings "must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation and internal quotations omitted).

### b. Overpayment of Benefits

If the Commissioner finds that an overpayment of benefits has been made to an individual, the Commissioner is required to recover the amount of the overpayment by decreasing a payment due to such individual or requiring a refund of the overpayment. 42 U.S.C. § 404(a)(1); *see Beebe v. Astrue*, No. 07 Civ. 3960, 2008 WL 5243890, at *3 (E.D.N.Y. Dec. 15, 2008). However, the Commissioner cannot recover overpayments of benefits where the individual is without fault in accepting the overpayments, and recovery would either (1) defeat the purpose of Title II of the Act or (2) be against equity and good conscience. 42 U.S.C. § 404(b). The burden is on the claimant to establish that recovery would defeat the purpose of Title II of the Act or be against equity and good conscience. *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1042 (2d Cir. 1984); *Adams v. Astrue*, No. 11 Civ. 289, 2012 WL 768211, at *5 (E.D.N.Y. Mar. 9, 2012) ("Even if the recipient can demonstrate that he is without fault, he is still responsible for the overpayment unless he can also demonstrate that the recovery by the Commissioner would defeat the purpose of Title II of the Act or would be against equity and good conscience.").

Recovery of an overpayment defeats the purpose of Title II of the Act where it would "deprive the person of income required for ordinary and necessary living expenses." C.F.R.

7

§ 404.508(a). This determination "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." *Id.* Additionally, recovery of an overpayment can be against equity and good conscience where the claimant demonstrates that he or she "changed his or her position for the worse" or "relinquished a valuable right" because of reliance on the overpayment. C.F.R. § 404.509; *see also Nnakwe v. Astrue*, No. 11 Civ. 2415, 2012 WL 3061505, at *2 (E.D.N.Y. July 26, 2012).

### c. New Evidence

A court reviewing the Commissioner's determination must generally base its decision "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g); *see Lopez v. Astrue*, No. 09 Civ. 1678, 2011 WL 6000550, at *10 (E.D.N.Y. Nov. 28, 2011). However, pursuant to the sixth sentence of 42 U.S.C. § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Raitport v. Callahan*, 183 F.3d 101, 104 (2d Cir. 1999). Thus, remand pursuant to the sixth sentence requires (1) "a showing that there is new and material evidence" and (2) "good cause for the failure to incorporate that evidence into the record in a prior proceeding." *Ali v. Astrue*, No. 09 Civ. 2123, 2010 WL 889550, at *7 (E.D.N.Y. Mar. 8, 2010) (citing *Raitport*, 183 F.3d at 103). Both requirements are satisfied in this case.

Plaintiff has presented two pieces of new and material evidence: (1) additional credit card statements from the relevant time period, and (2) documents concerning the closure of

Plaintiff's IRA account.[4] (Pl. Opp'n 62–69; Pl. Suppl. Mem. 1; Pl. Suppl. Ex. at 1, 3, 5.) "New evidence is considered material if (1) it is 'relevant to the claimant's condition during the time period for which benefits were denied,' (2) it is 'probative,' and (3) there is 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 644 (2d Cir. 2007) (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). Plaintiff's IRA account and his credit card statements from July and September 2009 are relevant and probative to the determination of whether recovery of the overpayment would deprive Plaintiff "of income required for ordinary and necessary living expenses." C.F.R. § 404.508(a). Defendant argues that the new evidence is not material because it would not have altered the Commissioner's decision.[5] (Def. Suppl. Opp'n 3.)

The Appeals Council relied on four main factors in concluding that recovery of the overpayment would not defeat the purpose of Title II of the Act: (1) the worker's compensation settlement; (2) real estate; (3) credit card statements; and (4) Polish Slavic Center account totaling $21,300.13. (R. at 7.) Plaintiff's new evidence speaks directly to two of these four

---

[4] Plaintiff indicates in his July 6, 2011 letter to the Appeals Council that he is attaching documentation to demonstrate that his IRA account was closed on February 3, 2009. (R. at 143.) Plaintiff's letter purports to attach a number of documents, pages 51 to 124. *Id.* However, the administrative record only contains pages 1 to 6 and 98 to 124. *Id.* at 145–171. The record does not include any documentation regarding the IRA account, and the Appeals Council's decision does not mention any evidence that the IRA account no longer exists. Since the documents regarding Plaintiff's IRA account are not in the administrative record and the Appeals Council does not appear to have considered them, this evidence is new.

[5] Defendant argues that the documents that Plaintiff has submitted are neither new nor material. (Def. Suppl. Opp'n 3.) Defendant is correct that some of the documents Plaintiff submitted, in particular his credit card statement from December 2009, were included in the administrative record below. (Def. Suppl. Opp'n 3; R. at 150.) However, as Defendant concedes, Plaintiff's credit card statements from July and September 2009 were not included in the record below and are new evidence. (Def. Suppl. Opp'n 3; Pl. Suppl. Mem. 1–2.)

factors. First, the Appeals Council noted that Plaintiff's credit card bills reflect "several expenditures for items that would not be considered necessary or ordinary living expenses." *Id.* The Appeals Council cited "charges for airline tickets, Chanel, and Victoria's Secret items." *Id.* However, Plaintiff's July and September 2009 credit card statements demonstrate that Plaintiff took out at least two additional cash advances during the relevant time period, suggesting that Plaintiff incurred debt on his credit card to pay his ordinary living expenses. Next, the Appeals Council noted that Plaintiff's "wife applied for Supplemental Security Income in 2009 and was found ineligible due to a Polish Slavik Center account totaling $21,300.13." *Id.* Plaintiff has offered undisputed evidence that, although he and his wife both had IRA accounts at the Polish Slavic Center, his wife's account closed on November 21, 2007 and his closed on February 3, 2009, after the funds were fully dispersed.[6] (Pl. Opp'n 2–3, 62–66, 67.) Accordingly, the Court finds that there is a "reasonable possibility that the new evidence would have influenced" the decision and, therefore, the evidence is material. *Pollard*, 377 F.3d at 193 (citation omitted).

The Court also finds good cause for Plaintiff's failure to present this evidence in the prior proceeding. A claimant's *pro se* status can establish good cause for the purposes of remand. *Jones v. Sullivan*, 949 F.2d 57, 61 (2d Cir. 1991); *see also Lopez*, 2011 WL 6000550, at *12 ("[A] court may properly consider the plaintiff's *pro se* status in its determination of good cause."). Plaintiff was *pro se* at the prior proceeding, and the ALJ failed to make any attempt to

---

[6] The Commissioner does not dispute that the IRA account was closed prior to the suspension of Plaintiff's benefits, arguing, instead, that the Appeals Council "did not rely" on this account in reaching its decision. (Def. Reply 4) ("Rather, the Appeals Council simply noted that in June 2009, Plaintiff's wife had been found ineligible for Supplemental Security Income due to excess resources consisting of a specific bank account that contained over $21,000.00."). This argument is disingenuous. Defendant cannot claim that a bank account containing $21,000 did not affect the Appeals Council's decision that Plaintiff had the financial resources to pay his ordinary living expenses in the absence of his disability benefits.

develop the record or aid Plaintiff in understanding the legal issues involved in his claim.[7] In light of Plaintiff's *pro se* status, the Court finds good cause for his failure to submit all of his credit card statements or his bank account information in the prior proceedings.[8] *See Jones*, 949 F.2d at 61 ("Jones' *pro se* status may provide good cause for her failure to introduce this evidence in the prior proceeding."); *Lopez*, 2011 WL 6000550, at *12 (good cause where the plaintiff "has gone through the entirety of the application process without help of an attorney who could help her focus and substantiate her claims of disability" and the "agency may not have properly developed the record"); *Lane v. Apfel*, No. 98 Civ. 2068, 2000 WL 1118921, at *9 (S.D.N.Y. Aug. 8, 2000) ("[S]ince Lane is a pro se claimant, it is likely that he did not understand that he needed these kind of highly detailed reports to prove his claim."). The Court finds that Plaintiff has provided new, material evidence and that Plaintiff had good cause for failing to submit the evidence in the prior proceeding. Accordingly, this action is remanded for consideration of the new evidence.

---

[7] When a claimant waives his right to counsel and proceeds *pro se*, the ALJ has a "heightened" duty to "develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009) (citations omitted). The ALJ must "protect a *pro se* claimant's rights by ensuring that all of the relevant facts [are] sufficiently developed and considered." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (alteration in original) (citation and internal quotation marks omitted). Plaintiff's hearing lasted 27 minutes, and the transcript is only 18 pages long. (R. at 174–191.) The ALJ asked only a handful of questions about Plaintiff's financial situation, asking about any money he had in his checking and savings account or any benefits or income his wife received. (R. at 183–85.)

[8] Moreover, Plaintiff appears to have attempted to submit the records related to his IRA account, although they may have been misplaced due to an administrative error. In any event, given Plaintiff's *pro se* status and his attempt to submit the records, good cause is established. *See Miller v. Barnhart*, No. 03 Civ. 2072, 2004 WL 2434972, at *10 (S.D.N.Y. Nov. 1, 2004) (finding good cause where the ALJ's administrative error may have resulted in Plaintiff's records not being entered into evidence).

## III. Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings is denied. This action is remanded for further proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g). The Clerk of Court is directed to close this case.

SO ORDERED:

/S/ Judge Margo K. Brodie

MARGO K. BRODIE
United States District Judge

Dated: January 3, 2012
Brooklyn, New York