UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ANDRZEJ SKRODZKI,

                     Plaintiff,                  **MEMORANDUM & ORDER**
                                                11-CV-5173 (MKB)

          v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On October 21, 2011, Plaintiff Andrzej Skrodzki, proceeding *pro se*, filed the above-captioned Complaint, seeking review of a decision by the Commissioner of Social Security (the "Commissioner") denying Plaintiff's request that the Commissioner waive recovery of disability insurance benefits that were overpaid to Plaintiff. (Compl., Docket Entry No. 1.) Defendant moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court heard argument on October 29, 2012[1] and denied the Commissioner's motion for judgment on the pleadings, remanding the decision to the Social Security Administration ("SSA") for consideration of new evidence pursuant to 42 U.S.C. § 405(g). *See Skrodzki v. Comm'r of Soc. Sec.*, No. 11-CV-5173, 2013 WL 55800, at *1 (E.D.N.Y. Jan. 3, 2013). On remand, Administrative Law Judge David Nisnewitz (the "ALJ") considered the new evidence and denied Plaintiff's application for the Commissioner to waive recovery of the overpaid benefits. (Certified Admin. Record ("R.") 240–249, Docket Entry No. 70.) On March 19, 2015, Plaintiff filed a motion to reopen the case before this Court,

---

[1] At the argument, Plaintiff was provided with a Polish interpreter, who appeared by telephone.

(Docket Entry No. 68), and after Plaintiff's appeal period to the Appeals Council had expired, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Comm'r Not. of Mot. for J. on the Pleadings, Docket Entry No. 72; Comm'r Mem. in Supp. of Mot. for J. on the Pleadings ("Comm'r Mem."), Docket Entry No. 73). Plaintiff filed a letter opposing the motion. (Pl. Ltr. in Opp'n to Comm'r Mot. ("Pl. Opp'n")[2], Docket Entry No. 75.) For the reasons discussed below, the Court denies the Commissioner's motion and remands the action for proceedings consistent with this Memorandum and Order.

## I. Background

### a. Background prior to remand

Plaintiff was injured at work on May 9, 2000 and began receiving workers' compensation on May 10, 2000. (R. 245, 289–293.) On April 10, 2001, Plaintiff applied for disability insurance benefits. (R. 260–63.) When Plaintiff applied, he informed the Social Security Administration ("SSA") that he was receiving workers' compensation benefits. (R. 260.) Plaintiff's application was approved, and he began receiving disability benefits. (R. 263.) Plaintiff continued to receive workers' compensation payments until January 24, 2003, when the payments were suspended due to a third-party workers' compensation settlement. (R. 76–78, 245, 271.) Plaintiff received $340,000 in the workers' compensation settlement. (R. 245.)

On May 17, 2008, Plaintiff received a letter from the SSA, informing him that the SSA had overpaid him $3448 between December of 2000 and February of 2002. (R. 361–64.) The SSA had not adjusted Plaintiff's benefits to account for the workers' compensation that he was

---

[2]  Because Plaintiff's opposition memorandum is not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system ("ECF").

receiving until 2003. (*Id.*) The letter informed Plaintiff that he had the right to appeal the SSA's decision, or, in the alternative, the right to seek a waiver of recovery of the overpayment. (R. 363.) Plaintiff filed a request for reconsideration on July 7, 2008. (R. 267.) Upon reconsideration, the SSA found that the overpayment determination was correct but advised Plaintiff of his right to seek a waiver. (R. 264–271.) On March 13, 2009, Plaintiff filed a request for a waiver of the recovery of overpayment. (R. 277–286.) In his waiver request, Plaintiff stated that the total amount of money that he had in a bank account was $101, and that he and his wife did not have a car or any real estate property. (R. 281.) He indicated that their only monthly income was $654 in social security benefits and $323 of his wife's food stamps. (R. 283.) He stated that their monthly expenses were $934 — rent or mortgage ($421), food ($382) and utilities ($131). (R. 284.)

On March 28, 2009, the SSA informed Plaintiff that his request for a waiver was denied but that he would have the opportunity to have a personal conference to review his file with "J Kim," an otherwise unidentified employee of the SSA. (R. 113–14.) On April 8, 2009, Plaintiff met with Kim and provided her with copies of the letter he previously submitted in 2001, which informed the SSA of his workers' compensation benefits. (R. 274.) Plaintiff claims that Kim was embarrassed by the SSA's mistake and made a copy of the letter. (R. 274.) By notice dated April 24, 2009, the SSA informed Plaintiff that his waiver request would not be granted and that he could request a hearing if he disagreed. (R. 276.) On May 27, 2009, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (R. 294–96.) Plaintiff argued that he had informed the SSA in 2001 that he was receiving workers' compensation benefits and that he should not have to repay the overpayment since it was not his fault. (R. 294–96.) He further argued that the SSA had treated him poorly and that the SSA was discriminating against him by

seeking to recover the overpayment. (R. 294–96.) Plaintiff alleged that Kim had attempted to

steal Plaintiff's April 2001 letter informing the SSA about his workers' compensation payments.

(R. 294–96.) On June 2, 2009, Plaintiff received a notice that his benefits would be withheld in

their entirety from June to October 2009 and he would receive a partial award of his benefits for

November 2009 (the "Recovery Period"). (R. 297.) His benefits would be paid in full beginning

in December 2009. (R. 297.) According to the SSA, Plaintiff's wife, Walentyna Skrodzka,

submitted an application for supplemental security income on June 15, 2009 to SSA, which

stated that her husband had an individual retirement account ("IRA") at the Polish Slavic Center

valued at $21,300.13.[3] (R. 457–464.) On June 22, 2009, Plaintiff's wife's application was

denied because she had resources worth more than $3000. (R. 465, 469.) In fact, Plaintiff closed

his IRA at the Polish Slavic Center on February 3, 2009, (R. 478), and his wife closed her

account on November 21, 2007, (R. 479).

On September 29, 2009, the ALJ held a hearing regarding Plaintiff's request for waiver

of recovery of the overpayment. (R. 322; Certified Admin. Record from First Appeal ("R1")[4]

172–191, Docket Entry No. 24.) At the hearing, the ALJ informed Plaintiff of his right to have

an attorney, and Plaintiff waived that right.[5] (R1. 174.) Plaintiff testified at the hearing that his

wife no longer worked but received workers' compensation in the amount of $270 every two

---

[3] The Administrative Record contains a copy of Walentyna Skrodzka's application that includes handwritten annotations by Plaintiff. (*See, e.g.*, R. 460 (indicating that the IRA account reflected "false information").)

[4] The Administrative Record on remand was filed on September 14, 2015, (Docket Entry No. 70-1 and 70-2), but does not include a transcript of Plaintiff's first hearing before the ALJ.

[5] The ALJ's decision states that Plaintiff was represented at the hearing "by Michelle Saich, a non-attorney." (R1. 25.) Plaintiff claims that he was not represented by anyone at the hearing, (R1. 174), and that he has never even heard of "Michelle Saich," (R1. 18, 20, 142).

weeks. (R1. 178–79.) Plaintiff also testified that he traveled to Poland approximately once a year and that he received medical treatment in Poland. (R1. 180.) He testified that he would generally stay in Poland for about a month. (R1. 182.) Plaintiff stated that he received $340,000 in a workers' compensation settlement, but one-third of the settlement went to his lawyer and the remainder was spent buying the co-op he now lives in and paying for his daily living costs in the six years since the settlement. (R1. 188.) He testified that he did not have any of the settlement money and that he had accrued credit card debt. (R1. 188.)

The ALJ denied Plaintiff's application for a waiver of recovery of the overpayment. (R. 322–24.) The ALJ found that Plaintiff had failed to timely inform the Commissioner of his workers' compensation settlement and, therefore, was "not without fault" in receiving and accepting the overpayment. (R. 324.) Specifically, the ALJ found that, even though Plaintiff "asserted at the hearing that he sent the Administration a letter concerning the results of his workers' compensation claim," Plaintiff had not informed the SSA until 2009. (R. 323.) However, Plaintiff's April 10, 2001 application states, "I am receiving or expect to receive workers' compensation," (R. 260), and, at the hearing before the ALJ, Plaintiff had provided a copy of his April 10, 2001 letter to the SSA indicating that he was receiving workers' compensation, (R. 109.) The ALJ next found that Plaintiff had "sufficient resources to allow for repayment without causing him hardship" based on Plaintiff's "monthly benefit payments," as well as "resources in the form of the settlement moneys he received in connection with both his workers' compensation payments and the third-party settlement." (R. 323–24.) The ALJ did not cite to, nor does there appear to be, any evidence in the record that Plaintiff still has any of the settlement money. Moreover, at the time of the decision, Plaintiff was no longer receiving

workers' compensation benefits or disability benefits.[6]  From June of 2009 through October of 2009, Plaintiff's disability insurance benefits were withheld in their entirety, at $654 per month. (R. 297.)  In November of 2009, Plaintiff's benefits were withheld in part.  (R. 297.)

Plaintiff appealed the ALJ's decision to the Appeals Council.  (R. 325–26.)  On June 7, 2011, the Appeals Council informed Plaintiff that it intended to find that, although Plaintiff was without fault in accepting the overpayment, recovery of the overpayment could not be waived because repayment would not defeat the purpose of Title II of the Social Security Act (the "Act") or be against equity and good conscience.  (R. 405–408.)  The Appeals Council informed Plaintiff that he had 30 days to send any additional evidence.  (R. 406.)  On July 6, 2011, Plaintiff responded to the Appeals Council, submitting, among other things, credit card statements to demonstrate the debt he was forced to incur during the period his benefits were withheld or reduced.  (R. 409–445.)  Plaintiff submitted credit card statements from May of 2009, (R. 422), October through December of 2009, (R. 410–412), and multiple months outside of the Recovery Period, (R. 413–421).

The Appeals Council issued a decision on August 24, 2011, reversing the ALJ's finding that Plaintiff was not without fault in accepting and causing the overpayment but adopting the finding that recovery would not defeat the purpose of the statute or be against equity and good conscience.  (R. 449–451.)  The Appeals Council noted that Plaintiff had stated in his original application for disability insurance benefits, on April 10, 2001, that he was receiving workers' compensation benefits, and that Plaintiff had no reason to be aware that he was being overpaid.

---

[6]  In his letter to the SSA Appeals Council, Plaintiff stated that when the SSA deducted his benefits from June until November of 2009, his only source of income was "food stamps" through the Supplemental Nutrition Assistance Program ("SNAP") and his wife's worker's compensation benefits, the sum of which was $960.  (R. 329.)

(R. 450.)  In finding that recovery of the overpayment would not deprive Plaintiff "of income required for ordinary and necessary living expenses," the Appeals Council cited Plaintiff's 2003 settlement of $340,000 and his ownership of real estate in the form of a co-op.[7]  (R. 450.)  The Appeals Council rejected Plaintiff's argument that his credit card statements proved that recovery should be waived.  (R. 450.)  The Appeals Council found that the credit card statements reflected charges — airline tickets, and items from Chanel and Victoria's Secret — that were not "necessary and ordinary living expenses."[8]  (R. 450.)  Finally, the Appeals Council noted that Plaintiff's wife had been found ineligible for supplemental security income in 2009 because Plaintiff had a bank account containing $21,300.13.  (R. 450.)  In conclusion, the Appeals Council found that "the claimant's statement, credit card bills and the evidence in the record are not sufficient to establish that recovery of the overpayment would leave the claimant unable to pay for his necessary and ordinary living expenses and thus defeat the purpose of Title II of the Act."  (R. 450–51.)  The Appeals Council also noted that "there is no evidence that the claimant relied on the overpayment funds to his detriment or relinquished a valuable right because of his reliance on the overpaid monies."  (R. 451.)

Plaintiff, proceeding *pro se*, filed an appeal of the Commissioner's decision in the U.S. district court for the Eastern District of New York.  (*See* Compl.)  In support of his appeal,

---

[7]  Plaintiff submitted a copy of his certificate of ownership of 732 common shares in the Montclair Gardens co-op.  (R. 79.)  According to the certificate, the shares were transferred to Plaintiff and his wife, as joint tenants with a right of survivorship, on August 29, 2001.  (R. 79.)  Plaintiff testified that he used part of the third-party settlement in 2003 to pay off the mortgage.  (R. 862–63.)

[8]  The Court notes that the credit card statements reflecting charges from Chanel and Victoria's Secret are well outside of the Recovery Period.  (R. 417 (Charge from Chanel, dated September 22, 2010); R. 416 (Charge from Victoria's Secret, dated May 26, 2010); R. 285 (explaining both purchases).)

Plaintiff submitted a number of documents, including evidence that Plaintiff closed his Polish Slavic Center account prior to the suspension of his disability benefits, (R. 477, 478); proof of Plaintiff's and his wife's medical treatment in Poland, (R. 53–55);[9] documentation of his wife's workers' compensation benefits, (R. 93); statements reflecting Plaintiff's monthly payments to the co-op board where he lives, (R. 91–92); Plaintiff's utility bills, (R. 95–101); and statements reflecting the resolution of fraudulent charges to Plaintiff's credit card, (R. 102, 104, 106, 108). At argument on October 15, 2012, Plaintiff represented to the Court that he had additional credit card statements that would demonstrate the cash advances he was forced to take during the period that his benefits were suspended. (R. 512.) The Court granted Plaintiff leave to submit additional documents. (R. 526.) Plaintiff provided the Court with credit card statements from the Recovery Period, which show additional cash advances on July 7, 2009 and August 27, 2009. After examining Plaintiff's documentation, the Court remanded the case to the SSA to consider Plaintiff's application in view of the new evidence. *See Skrodzki*, 2013 WL 55800, at *1.

    **b.   Plaintiff's financial documentation**

    Plaintiff submitted hundreds of pages of documents to the SSA, nearly all of which were before the ALJ on remand. With certain exceptions, the Court discusses the evidence on which the ALJ appears to have relied,[10] spanning April of 2009 to December of 2009.

---

[9] Plaintiff provided several additional pages of medical records from Poland and had some of those records translated to English, but they appear to cover a time frame beyond the Recovery Period. (*See* R. 56–67.)

[10] The Commissioner's motion papers include an exhaustive account of Plaintiff's finances from January through December of 2009, detailing Plaintiff's checking account transactions in addition to his credit card transactions. (*See* Comm'r Mem. 7–11.) As the Commissioner notes, Plaintiff did not submit the checking account statements from July of 2009 to October of 2009, (*id.* at 10), nor is it clear that the SSA requested the missing statements, (*see* R. 175 (listing the additional information required on remand); R. 860–66 (confirming during the

In Plaintiff's "Request for Waiver of Overpayment Recovery," submitted on March 13, 2009, Plaintiff indicated that he lived with his wife, Walentyna Skrodzka, age 61. (R. 280–81.) Together, the two had a joint account with a balance of $101. (R. 281.) Plaintiff indicated that neither he nor his wife owned a car, and that, other than their home, neither of them owned real property. (R. 281.) Neither Plaintiff nor his wife was employed, and they had a combined monthly income of $977 attributable to Plaintiff's disability benefits and his wife's food stamps. (R. 283.) Listing his monthly household expenses, Plaintiff noted that his mortgage or rent was $421 per month, food (including the value of food stamps) was $382 per month, and utilities were $131 per month. (R. 284.) Plaintiff's total monthly household expenses amounted to $934, and he indicated that he had no other expenses. (R. 284.)

Plaintiff's credit card statement from April of 2009 reflects that in March of 2009, he spent $103.89 on electronics and $35 on transportation through the New York City EasyPay[11] program and was charged $12 by Reservation Rewards.[12] (R. 583.) Plaintiff closed the April 9, 2009 cycle with a balance of negative $180.32 credited to his card. (R. 583.)

---

hearing on remand that all credit card statements for 2009 were filed with the ALJ and making no mention of debit cards or checking accounts)). In view of the incomplete record and in the absence of any indication that the ALJ relied on Plaintiff's checking account transactions in reaching a decision, the Court declines to discuss those transactions except as necessary.

[11] EasyPay links a customer's MetroCard to a debit or credit card and refills it automatically. *See* http://web.mta.info/metrocard/EasyPayXpress.

[12] Reservation Rewards is a monthly service that provides discounts on dining, shopping and attractions. *See* http://www.reservationrewards.com. Plaintiff has indicated that several of the smaller, recurring charges on his credit card — including those from Reservation Rewards — were fraudulent charges. (*See, e.g.*, R. 257 ("The reservation reward on September 29, 2009 at amount of $12.00 was fraudulent transaction and the funds were returned to my account. I never ordered that transaction[].").)

Plaintiff's credit card statement from May of 2009 indicates that in April of 2009, he spent $355.30 on airline tickets and $106.97 on electronics[13] and was charged $12 by Reservation Rewards. (R. 422.) In addition, Plaintiff placed a catalog or web order for $32.98. (R. 422.) Plaintiff closed the May 11, 2009 cycle with a balance of $381.63 on his card. (R. 422.) Plaintiff explained in multiple letters that in April of 2009, he purchased an airline ticket to Moscow during a Delta Airlines promotional sale so that his wife could visit her aunt, who was in poor health and died shortly after the visit. (R. 379, 384.)

Plaintiff's credit card statement from June of 2009 indicates that in May of 2009, Plaintiff spent approximately $1075 on airline tickets and was charged $12 by Reservation Rewards. (R. 703.) Plaintiff also made a payment of $1780 on May 19, 2009 and closed the June 9, 2009 billing cycle with negative $326.82 credited to his card. (R. 703.) Plaintiff's final disability benefits payment prior to the Recovery Period was credited to his checking account on June 3, 2009. (R. 492.) Plaintiff explains that he had scheduled a necessary medical procedure in April of 2009 that was cancelled by his insurance plan, and that he decided to undergo a less expensive course of treatment in Poland. (Pl. Opp'n 4.) Plaintiff also notes that as of May of 2009, his wife began receiving workers' compensation benefits of $584 per month. (*Id.*; *see also* R. 436 (notice of decision from workers' compensation board dating accident to July 17, 2006).)

Plaintiff's credit card statement from July of 2009 reflects that in June of 2009, Plaintiff was charged $12 by Reservation Rewards and withdrew a cash advance of $300. (R. 704.)

---

[13] Plaintiff attached a statement print-out of the electronics charges, (R. 433), and explained that the $106.97 charge applies to a computer keyboard and a preowned digital camera, (R. 383).

Plaintiff closed the July 10, 2009 billing cycle with negative $14.74 credited to his card. (R. 704.)

Plaintiff's credit card statement from August of 2009 reflects that in July of 2009, Plaintiff was charged $12 by Reservation Rewards. (R. 706.) Plaintiff closed the August 11, 2009 billing cycle with negative $2.74 credited to his card. (R. 706.)

Plaintiff's credit card statement from September of 2009 indicates that in August of 2009, Plaintiff spent $869.20 on airline tickets, withdrew a $300 cash advance and was charged $12 by Reservation Rewards. (R. 708.) Plaintiff closed the September 10, 2009 billing cycle with a balance of $1179.70 on his card. (R. 708.)

Plaintiff's credit card statement from October of 2009 indicates that in September of 2009, Plaintiff spent $683.16 on airline tickets, $616.51 on electronics, and $35 on transportation costs and was charged $12 by Reservation Rewards. (R. 410.) Plaintiff closed his October 9, 2009 billing statement with a balance of $2489.92 on his credit card. (R. 410.) Plaintiff explained that his September 13, 2009 airline ticket purchase was "connected with [his] trip to Poland to treat his health condition," and that in Poland he "repaired implants" and underwent medical procedures for his back. (R. 384.)

Plaintiff's credit card statement from November of 2009 indicates that in October of 2009, Plaintiff spent $1008 on airline tickets and $22.98 on a catalog or web order and was charged $12 by Reservation Rewards. (R. 411.) Plaintiff also made a payment for $80 in October and closed the October 10, 2009 billing cycle with a balance of $3490.29 on his card. (R. 411.) Plaintiff explained that he made the October 12, 2009 airline ticket purchase so that his wife could visit Poland to see her mother, who was in the hospital with health problems, and to see her brother, who had just undergone bypass surgery. (R. 384.)

During September and October of 2009, Plaintiff resided in Poland with his daughter and her family.[14] (Pl. Opp'n 3; R. 501.) During that time, Plaintiff's daughter covered Plaintiff's living expenses, including medical, food and transportation costs. (R. 501.)

Plaintiff's credit card statement from December of 2009, during which month he received a pro-rated $436 of November's disability benefits, (R. 482), reflects that in November of 2009, Plaintiff spent $25.94 at the "AMK Feel Good Store," withdrew a cash advance of $300 and was charged $12 by Reservation Rewards. (R. 600.) Plaintiff attached documentation that he had purchased "bunion regulators" for his wife from the AMK Feel Good Store. (R. 431.) Plaintiff also made a payment of $80 to his credit card and closed the December 10, 2009 billing cycle with a balance of $3778.91 on his card. (R. 431, 608.)

Plaintiff received full disability benefits on January 3, 2010. (R. 482.) Plaintiff's credit card statement from January of 2010 reflects that in December of 2009, Plaintiff withdrew three cash advances totaling $600, spent $39.94 on printer ink and was charged $12 by Reservation Rewards. (R. 609.) In total, Plaintiff withdrew $1500 in cash advances between July 7, 2009 and December 22, 2009. (R. 481.)

### c. The ALJ's Decision of September 23, 2014

On September 23, 2014, ALJ Nisnewitz conducted Plaintiff's administrative hearing on remand. (R. 839–878.) Plaintiff testified with the assistance of a Polish interpreter, but waived his right to counsel. (*See* R. 839–878.) On February 19, 2015, the ALJ issued a decision finding

---

[14] Plaintiff explained in multiple submissions to the Court that he and his wife traveled frequently to Poland because their medical expenses would be unaffordable in the United States and because they both had ailing family members in Poland. (*See, e.g.*, R. 384; Pl. Opp'n 3, 4.) This appears to be borne out by Plaintiff's financial statements from 2010 and 2011, which reflect several additional trips to Poland for follow-up healthcare and funerals of family members. (R. 384.)

that Plaintiff was not at fault in incurring the overpayment of $3488, but that recovery of the overpayment would not defeat the purpose of Title II of the Act or be against equity and good conscience. (R. 246–49.) The ALJ therefore denied Plaintiff's application to waive recovery of the overpayment. (R. 249.)

In deciding that recovery of the overpayment would not defeat the purpose of Title II of the Act, the ALJ first noted that Plaintiff's wife's application for supplemental security income was denied because she was found to have resources worth more than $3000 — namely, Plaintiff's then-closed IRA. (R. 249.) The ALJ then cited Plaintiff's use of the workers' compensation settlement proceeds to pay down the mortgage on the co-op in which he resides, and noted that although Plaintiff's and his wife's IRAs were closed prior to the repayment withholding period, "the [Plaintiff's] IRA had a substantial amount of money shortly prior to the repayment withholding period." (R. 247.) The ALJ acknowledged that Plaintiff had taken three cash advances of $300 each on July 7, 2009, August 27, 2009 and November 17, 2009, but noted that it was "unclear whether [Plaintiff] spent the cash on food, which would be considered an ordinary and necessary living expense." (R. 247.) However, the ALJ's analysis appears to rest on the nature of the charges to Plaintiff's credit card with the Polish and Slavic Federal Credit Union between June of 2009 and November of 2009 — in particular, Plaintiff's $2560.36 in airline travel tickets for himself and his wife and $736.43 in computer-related expenses and miscellaneous other charges. (R. 248.) Acknowledging that Plaintiff insisted the airline tickets were for medical services and family funerals in Poland, the ALJ found that "airlines tickets, office supplies, work related expenses and computer related expenses do not constitute ordinary and necessary living expenses and [Plaintiff] would not have been deprived of income required for ordinary and necessary living expenses" as would be required to waive recovery of

13

overpayment under Title II of the Act. (R. 248.) The ALJ further found that the record contained "little or no evidence" that Plaintiff had relied upon the overpayment when it was occurring, and that, as a result, recovery of the overpayment would not be against equity and good conscience. (R. 249.)

Plaintiff did not appeal the decision to the Appeals Council. On September 14, 2015, the Commissioner filed the Administrative Record after remand and requested that the Court reopen the case. (Docket Entry No. 70.)

## II. Discussion

### a. Standard of Review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). Thus, judicial review of a Commissioner's final decision requires "two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The district court "first reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also Arzu v. Colvin*, No. 14-CV-2260, 2015 WL 1475136, at *8 (S.D.N.Y. Apr. 1, 2015) ("First, the court must decide whether the Commissioner applied the correct legal standard." (citing *Apfel*, 167 F.3d at 773)). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)); *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (reversing for

legal error); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulation, which resulted in incomplete factual findings). Courts review *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles . . . in assessing [the plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F. Supp. 2d 507, 520 (S.D.N.Y. 2009) (reversing for legal error after considering *de novo*).

Next, the Court examines the administrative record to "determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same). Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citations and internal quotation marks omitted). In deciding whether substantial evidence exists, the court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). The Commissioner's factual findings "must be given conclusive effect so long as they

are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)

(citation and internal quotations omitted). If, however, the Commissioner's decision is not

supported by substantial evidence or is based on legal error, a court may set aside the decision of

the Commissioner. *Box v. Colvin*, 3 F. Supp. 3d 27, 41 (E.D.N.Y. 2014); *see Balsamo v. Chater*,

142 F.3d 75, 79 (2d Cir. 1998).

### b. Overpayment of benefits

The Commissioner argues that because Plaintiff "did not demonstrate that he was unable

to meet his ordinary and necessary living expenses as a result of the recoupment of the

overpayment" during the Recovery Period, the ALJ correctly found that Plaintiff's repayment

couldnot be waived. (Comm'r Mem. 15.) Plaintiff argues that his expenses during the Recovery

Period constituted ordinary and necessary living expenses and that he has demonstrated that he

was unable to meet those expenses by submitting credit card statements evidencing the multiple

cash advances he made during the Recovery Period. (Pl. Opp'n 3–4.)

If the Commissioner finds that an overpayment of benefits has been made to an

individual, the Commissioner is required to recover the amount of the overpayment by

decreasing a payment due to such individual or requiring a refund of the overpayment.

42 U.S.C. § 404(a)(1); *see Hannon v. Barnhart*, 134 F. App'x 485, 486 (2d Cir. 2005); *Dunston

v. Colvin*, No. 14-CV-3859, 2015 WL 54169, at *5 (S.D.N.Y. Jan. 5, 2015) (citing *Chlieb v.

Heckler*, 777 F.2d 842, 846 (2d Cir. 1985)). However, the Commissioner cannot recover

overpayments of benefits where the individual is without fault in accepting the overpayments,

and recovery would either (1) defeat the purpose of Title II of the Act or (2) be against equity

and good conscience.[15]  42 U.S.C. § 404(b).  The burden is on the claimant to establish that

recovery would defeat the purpose of Title II of the Act or be against equity and good

conscience.  *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1042 (2d Cir. 1984);

*see Hannon*, 134 F. App'x at 487 ("As [the plaintiff] did not meet her burden of establishing that

she was 'without fault,' she was properly denied a waiver of recovery."); *Adams v. Astrue*,

No. 11-CV-289, 2012 WL 768211, at *5 (E.D.N.Y. Mar. 9, 2012) ("Even if the recipient can

demonstrate that he is without fault, he is still responsible for the overpayment unless he can also

demonstrate that the recovery by the Commissioner would defeat the purpose of Title II of the

Act or would be against equity and good conscience.").

Recovery of an overpayment defeats the purpose of Title II of the Act where it would

"deprive the person of income required for ordinary and necessary living expenses."  C.F.R.

§ 404.508(a).  This determination "depends upon whether the person has an income or financial

resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his

current benefits for such needs."  *Id.*  An individual's "ordinary and necessary living expenses"

include:

> (1) Fixed living expenses, such as food and clothing, rent,
> mortgage payments, utilities, maintenance, insurance (e.g., life,
> accident, and health insurance including premiums for
> supplementary medical insurance benefits under title XVIII), taxes,
> installment payments, etc.;
>
> (2) Medical, hospitalization, and other similar expenses;
>
> (3) Expenses for the support of others for whom the individual is
> legally responsible; and

---

[15]  As discussed above, the February 19, 2015 decision of the Appeals Council found that Plaintiff was without fault in incurring the overpayment.  (R. 246–49.)  The issue of Plaintiff's fault is therefore not before the Court on appeal.

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

*Id.* In addition, recovery of an overpayment can be against equity and good conscience where the claimant demonstrates that he or she "changed his or her position for the worse" or "relinquished a valuable right" because of reliance on the overpayment. C.F.R. § 404.509; *see also Nnakwe v. Astrue*, No. 11-CV-2415, 2012 WL 3061505, at *2 (E.D.N.Y. July 26, 2012).

### c. The ALJ's decision as to ordinary and necessary living expenses

The Commissioner argues that Plaintiff did not demonstrate that he was unable to meet his ordinary and necessary living expenses during the Recovery Period because (1) "Plaintiff was not even incurring living expenses in September and October," when he lived with his daughter; (2) Plaintiff's wife's benefits replaced his own during the Recovery Period;[16] (3) Plaintiff withdrew his IRA funds during the course of the year preceding the Recovery Period; and (4) "Plaintiff made substantial expenditures on his credit card that were not for necessary or ordinary living expenses." (Comm'r Mem. 15–17.) The ALJ's decision briefly mentions two of these arguments and relies on the final one — that Plaintiff made substantial expenditures on his credit card that could not be classified as necessary or ordinary living expenses — to conclude that recovery of the overpayment did not deprive Plaintiff of the income required for his ordinary

---

[16] In reaching this conclusion, the Commissioner relies on a notice of decision from the New York State Workers' Compensation Board that awarded Plaintiff's wife payments of $134.67 per week from March 1, 2009 to April 6, 2010. (Comm'r Mem. 16 (citing R. 436).) The Commissioner, however, overlooked the fact that the decision is dated April 6, 2010 and refers to March 1, 2009 as the start date for back-pay. (R. 436 ("The employer or insurance carrier is directed to pay the following awards, <u>less payments already made</u> by the employer or carrier, for the periods indicated below . . . .").) Plaintiff's wife would receive a sum total of $7703.12, but there is no indication of how much had already been paid to Plaintiff's wife and how much remained to be paid to her as of April 6, 2010. (R. 436.) Thus, although the Commissioner accurately identifies that "[t]he total workers' compensation owed to Plaintiff's wife for the six-month period March through September 2009 would equal $3501.42," the Court finds unpersuasive the Commissioner's speculation that those payments were meted out regularly during the Recovery Period. (Comm'r Mem. 16.)

and necessary living expenses. (*See* R. 243–49.) In so concluding, however, the ALJ failed to apply the statutory categories that define "ordinary and necessary living expenses," and thus committed reversible error.[17] *See* C.F.R. § 404.508(a); *Valente*, 733 F.2d at 1043 (reversing because "[a]lthough the ALJ recited these criteria at the beginning of his opinion, he did not indicate how, or whether, he applied them").

First, the ALJ took note of multiple financial events, but it is unclear whether or how those events influenced the decision that recovery of the overpayment did not deprive Plaintiff of income required for his ordinary and necessary living expenses. For example, the ALJ stated that shortly after the repayment withholding schedule was set in June of 2009, Plaintiff's wife was found ineligible to receive social security benefits because "it was found that [Plaintiff] and his wife had an account at the Polish Slavik Center totaling $21,300.13 in May 2009." (R. 246.) Plaintiff has refuted this fact in nearly every submission he has made to this Court and to the SSA, and at the time of the ALJ's decision, Plaintiff had twice furnished a certification from the institution that maintained his IRA stating that the account was closed on February 3, 2009. *See Skrodzki*, 2013 WL 55800, at *5 n.4; (R. 478). Although the ALJ acknowledged that Plaintiff's and his wife's IRAs were both closed prior to the repayment withholding period, the ALJ also implied, without stating outright, that Plaintiff improperly withdrew funds from his IRA after being informed that he was overpaid benefits. (R. 247 (noting that the balance on the account was $23,700.13 "the year prior to the recovery of the overpayment" and that "[Plaintiff's] IRA had a substantial amount of money shortly prior to the repayment withholding period").) Similarly, the ALJ notes that Plaintiff received a $340,000 settlement in 2003 and invested it in a

---

[17] Because the Court finds that the ALJ erred in considering whether the recovery of overpayment defeated the purpose of Title II of the Act, it need not reach the ALJ's decision that recovery of the overpayment was not against equity and good conscience.

co-op, further stating that "the third party settlement preceded the repayment withholding period." (R. 247.) The Court can only conclude that the ALJ's reference to these incidents reflects an implied determination as to Plaintiff's credibility, but the Court cannot, without more clarity, ascertain the relevance of these incidents to the ALJ's findings. To the extent that the ALJ has determined Plaintiff to be incredible, that credibility determination is entitled to deference when it is clearly stated. *Evans v. Colvin*, --- F. App'x ---, ---, 2016 WL 2909358, at *3 (2d Cir. May 19, 2016) ("Where supported by specific reasons, 'an ALJ's credibility determination is generally entitled to deference on appeal.'" (quoting *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013))); *Valente*, 733 F.2d at 1045 ("Where, as here, credibility is a critical factor in determining whether the claimant was without fault [for overpayment], the ALJ must have stated explicitly whether he believed the witness's testimony."). Here, the ALJ made no identifiable credibility determinations in reaching the decision that recovery of overpayment did not deprive Plaintiff of ordinary and necessary living expenses, and the Court therefore considers the only other evidence on which the ALJ appears to have relied.

In concluding that recovery of the overpayment could not be waived, the ALJ relied on Plaintiff's credit card expenditures during the Recovery Period. (R. 247–48.) The ALJ noted that Plaintiff had made cash advances from his credit card in July, August and November of 2009, as well as certain other cash advances from Plaintiff's checking account in November of 2009. (R. 247.) Apparently resolving the issue of the cash advances, the ALJ stated that "[w]hile it is unclear whether [Plaintiff] spent the cash on food, which would be considered an ordinary and necessary living expense, the undersigned notes that other charges as set forth below were clearly not spent on food." (R. 247.) As the Court understands Plaintiff's argument, Plaintiff made the cash advances in order to cover his ordinary and necessary living expenses

during the Recovery Period and thereafter. (*See* Pl. Opp'n 3.) To the extent that Plaintiff's already-submitted statements did not make clear how he spent his cash advances, the ALJ had a duty to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009) (holding that when a claimant waives his right to counsel and proceeds *pro se*, the ALJ has a "heightened" duty to "develop the record in light of the essentially non-adversarial nature of a benefits proceeding"); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (noting that the ALJ must "protect a *pro se* claimant's rights by ensuring that all of the relevant facts [are] sufficiently developed and considered" (citation and internal quotation marks omitted)).

The ALJ then assessed the nature of Plaintiff's other credit card expenditures during the recovery period — in particular, the expense of Plaintiff's and his wife's airline travel to Poland. (R. 247.) The ALJ acknowledged Plaintiff's explanation that he had traveled to Poland for medical treatment, but noted that "the travel ticket itself did not constitute a medical expense." (R. 247.) Further, the ALJ relied on Plaintiff's own categorization of his expenses as "travel expenses," "work related expenses," and "computer related expenses" to conclude that Plaintiff's expenses "do not constitute ordinary and necessary living expenses as described in 20 C.F.R. [§] 404.508." (R. 248.) Nowhere in his analysis of Plaintiff's case, however, does the ALJ consider the categories of expenses that constitute "ordinary and necessary living expenses as described in 20 C.F.R. [§] 404.508" or apply those categories to Plaintiff's expenses. The plain language of the statute states that ordinary and necessary living expenses may include, for example, "similar expenses" to medical and hospitalization expenses, as well as "other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living." 20 C.F.R. § 404.508. The ALJ failed to consider whether Plaintiff's travel to Poland, where Plaintiff's family resides and where he claims his medical treatment is significantly less

expensive than it is in the United States, (Pl. Opp'n 4), could fall within any number of expense categories and could reasonably be considered part of Plaintiff's standard of living.

Having decided that Plaintiff's travel to Poland did not constitute an ordinary and necessary living expense, the ALJ then noted that Plaintiff made $736.43 of purchases from SYX*Tigerdirect.com, the EasyPay program, Reservation Rewards and the AMK Feel Good Store. (R. 248.) Despite Plaintiff's repeated explanations that the bulk of these expenses fell within health and transportation categories of spending, the ALJ summarily concluded that these purchases "would not be considered necessary or ordinary living expenses." (R. 248.) Combining this $736.43 with Plaintiff's $2560.36 in airline travel, the ALJ found that "the total charges were $3296.79, which is very close to the overpayment amount," and consequently, Plaintiff "would not have been deprived of income required for ordinary and necessary living expenses."[18] As with the travel to Poland, the ALJ failed to consider Plaintiff's many explanations and documentary records of health and transportation spending, or to explain why, for example, the EasyPay program to access the New York City subway system would not qualify as an ordinary and necessary living expense.

As explained above, the Social Security regulation requires an inquiry into whether a claimant's financial resources are sufficient for "more" than ordinary and necessary needs, or whether a claimant "is dependent upon all of his current benefits" for such needs. *See* C.F.R.

---

[18] The Court notes that the charges deemed unordinary and unnecessary during the Recovery Period amounted to less than the $3448.00 in benefits withheld from Plaintiff during the Recovery Period. Thus, had Plaintiff not incurred the charges that the ALJ deemed unnecessary, Plaintiff may nevertheless have been deprived of income required for other ordinary and necessary living expenses.

§ 404.508(a). It does not, however, require a draconian approach to a claimant's finances.[19]  *See, e.g.*, *Posnack v. Sec'y of Health & Hum. Servs.*, 631 F. Supp. 1012, 1015 (E.D.N.Y. 1986) (noting that a claimant "is entitled to retain sufficient monetary resources in order to be prepared for emergencies without thereby making himself liable for repayment"); *Setian v. Apfel*, 110 F. Supp. 2d 24, 27 (D. Mass. 2000) (finding that the statute "does not, however, strictly mandate that a claimant exhaust *all* available funds to repay an overpayment"); *Hansen v. Harris*, 507 F. Supp. 900, 902–903 (W.D. Ark. 1981) ("The regulation does not require that the recipient prove that every dollar of income is required for living expenses, but only that substantially all of the income is needed."). The Court cannot uphold the ALJ's ruling that recovery of the overpayment did not defeat the purpose of Title II of the Act where the ALJ did not conduct a more searching inquiry into Plaintiff's explanations of his expenses, including by considering the expenses under the full statutory definition of "ordinary and necessary living expenses." *See* C.F.R. § 404.508(a); *see also Valente*, 733 F.2d at 1046 ("On remand, the ALJ must consider all of these matters, developing the record fully. If he determines that [the plaintiff] was not without fault . . . he must state clearly his rationale for the conclusions he draws so that, if appealed, his

---

[19]  The Court recognizes that, as counsel for the Commissioner stated in oral argument prior to remand, this issue is rarely decided at the federal district or appellate level:

> The Court: Ms. Mahoney, are you saying even if he had submitted credit card statements showing, for instance, that in addition to the $300 cash advance in November of 2009 that he took an advance each of the months that he could not meet his burden because his credit card statements showed he purchased these items that were not necessary [?]

> Ms. Mahoney: Not precisely, [Y]our Honor. This doesn't come up very often, this prong of the test.

(R. 521.) The Court notes that several courts have evaluated this prong of the test. *See, e.g.*, *Beebe v. Astrue*, No. 07-CV-3960, 2008 WL 5243890, at *9 (E.D.N.Y. Dec. 15, 2008); *Beekman v. Bowen*, No. 88-CV-7661, 1989 WL 280333, at *2 (S.D.N.Y. Dec. 14, 1989); *Marchese v. Sec'y of Health & Hum. Servs.*, 690 F. Supp. 162, 166 (W.D.N.Y. 1988); *Posnack v. Sec'y of Health & Hum. Servs.*, 631 F. Supp. 1012, 1015 (E.D.N.Y. 1986).

decision may be given appropriate judicial review.").  Accordingly, the Court vacates the ALJ's

decision and remands the case for more careful and accurate application of the categories in

C.F.R. § 404.508(a) to Plaintiff's expenses during the Recovery Period.  *See Valente*, 733 F.2d

at 1046; *see also Marchese v. Sec'y of Health & Hum. Servs.*, 690 F. Supp. 162, 166 (W.D.N.Y.

1988) (reversing and remanding "for more careful consideration of whether recovery from [the]

plaintiff of the entire sum overpaid would defeat the purpose of the Act").

## III.   Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is

denied.  The Commissioner's decision is vacated, and this action is remanded for further

administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of

Court is directed to close this case.


SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 13, 2016
       Brooklyn, New York